ODOM, J.
 

 Plaintiff is a corporation and W. O. Best was a stockholder, and up to the date of his death was general manager at a salary of $250 per month. He died intestate on November 25, 1928, and his widow, Mrs. Ruby L. Best, qualified as administratrix of the succession. It is alleged by plaintiff that during the course of his employment the said W. C. Best overdrew his account to the extent of $1,878.36, as shown by its books, and that said amount is now due it by his succession.
 

 Plaintiff alleges that Mrs. Best, as administratrix, is due ft the further sum of $250, less $41.66, this being an amount erroneously paid her after her husband’s death; and that, individually, she is due it the sum of $250 erroneously paid her by the president of the corporation on December 1, five days after her husband’s death.
 

 Defendant excepted to the citation on the ground that the clerk, in writing the citation, omitted the letters “Inc.” from the name of the corporation. This exception was overruled by the lower court. She then answered, denying that the succession of W. C. Best owed plaintiff anything, and denying that she owed it any sum individually. She reconvened, and prayed that the succession of Best have judgment against plaintiff in the sum of $275 for the use of a garage which plaintiff had used from January 7, 1927, down to the date of the death of said Best.
 

 There was judgment in plaintiff’s favor and against Mrs. Best as administratrix for $1,878.36, the amount of the alleged overdraft and against her, individually, for $250, with legal interest from October 11, 1930. Defendant appealed. Plaintiff answered the appeal, praying that the judgment be so amended as to allow interest from December 1, 1928.
 

 1. We find no merit in the exception to the citation. The name of the plaintiff corporation is “Southern Hide Co., Inc.” The suit was brought under this name, but, in making out the citation, the clerk omitted the letters “Inc.” after the name of the corporation, so that the title of the suit appeared thereon as follows: “Southern Hide Co. vs. Mrs. Ruby L. Best, Adm.” The objection is that the citation does not contain the correct title of the suit.
 

 
 *753
 
 The citation was accompanied by a certified copy of the petition which set out the name of the plaintiff as the “Southern Hide Co., Inc.” The citation together with a copy of the petition was served on defendant. There was therefore no uncertainty as to the identity of the person bringing the suit.
 

 Defendant could not have been misled by the omission of the letters “Inc.” from the name of the corporation. In fact, she does not claim that she was. Her objection is purely technical. She cites article 179 of the Code of Practice, which provides that the citation shall mention “the title of the cause,” and argues that inasmuch as the letters “Inc.” were left off, the ‘.‘title of the cause” was not mentioned.
 

 Conceding, as counsel argues, that the letters “Inc.” are part of the name of the corporation, the slight alteration of the name by omitting those letters was not misleading and did not vitiate the citation. Article 432 of the Civil Code provides that all corporations must be given a name, and in that name they must sue and he sued and do all their legal acts, but, says the Code in the same article, “although a slight alteration in this name be not important.” Town of Opelousas v. Andrus, 37 Da. Ann. 699. The court correctly ruled that this citation was valid.
 

 2. The plaintiff corporation was organized in January, 1927, with W. C. Best as one of its stockholders. He was general manager from the beginning until his death on November 25, 192S, and drew a salary of $250 per month. The testimony clearly shows that at the date of his death his account with the corporation was overdrawn $1,878.30. The items making up the overdraft were shown on the cash book and on the ledger.
 

 His wife, this defendant, was assistant bookkeeper from the date of the organization of the corporation to February 1, 1928, and she testified that, at the time she resigned, his account was overdrawn $758.54. Thereafter the books were kept in part by Mr. Best himself, and practically all the cash items charged to his account were entered on the cash book in his own handwriting. After he became ill on November 5th, there were a number of entries made by his brother, J. B. Best, who testified that these represented cash drawn by him and handed to Mrs. Best. Mr. McGuire, president of the corporation, testified that all the items charged to the account of the deceased after Mrs. Best ceased to be assistant bookkeeper on February 1, 1928, were in the handwriting of Mr. Best himself. His testimony to that effect is severely criticized by counsel for defendant because it was shown that twelve of the entries amounting to $98.59 were made by J. B. Best.
 

 What McGuire meant, no doubt, was that the entries on the account made prior to the date on which deceased became ill on November 5th were in his handwriting.
 

 The testimony shows that deceased, general manager of the corporation, was in the office practically all the time, and that he not only had access to the books, but that he personally supervised the bookkeeping, and therefore knew what the books showed as to the condition of his personal account. It is further shown that at the end of each month a trial balance was made and cheeked by Mr. McGuire and deceased. These showed
 
 *755
 

 the
 
 indebtedness of deceased to tbe corporation. If the books had been incorrect, Mr. Best could, and of course would, have corrected them. “
 

 3. Counsel for defendant says in brief (he did not argue the case orally) that the account was proved by only one witness, McGuire, the president, and that this testimony. is not corroborated.
 

 He cites Act No. 11 of 1926, which provides in s’ection 2 that parol evidence shall be incompetent and inadmissible to prove a debt on the part of a party deceased, even when suit is brought within one year, “unless it consists of the testimony of at least one credible witness of good moral character, besides the plaintiff; or unless it be to corroborate a written acknowledgment or a promise to pay, signed by the debtor.”
 

 Plaintiff is a corporation. Corporations cannot act, cannot testify except through their proper officers. The corporation here acted, testified through its president, McGuire, who was authorized, so that his testimony may be regarded as the testimony of the ■ corporation, the plaintiff itself.
 

 But counsel says that his testimony is not corroborated, as required by the act. He is in error. Mrs. Best testified that the account up to February 1, 1928, amounting to $758.64, was correct. J. B. Best, brother of deceased, testified that all the entries in the cash book on his account were made either by him, McGuire or by deceased himself, and that deceased received the amounts charged to him. He was shown seventy-three checks charged to deceased, these constituting the bulk -of the account, and was asked if they were in his brother’s handwriting, and if they were drawn for the payment of his brother’s personal obligations, and he answered that they were. McGuire’s testimony that the account was qorrect is therefore corroborated by that of Mrs. Best and by J. B. Best, and the requirements of the act were fully complied with.
 

 The account was proved to our satisfaction.
 

 4. After the death of Mr. Best, Mr. McGuire, who was president of the corporation, had full charge of its affairs. He says the other stockholders left everything to him.
 

 On December 1, five days after Mr. Best died, McGuire gave Mrs. Best the corporation’s check for $250, which she cashed. The corporation now demands that this sum be paid back as having been paid through error. The trial judge granted judgment against Mrs. Best for this amount. We think he erred.
 

 Article 2302 of the Civil Code provides that “he who has paid through mistake, believing himself a debtor, may reclaim what he has paid.”
 

 Article 18 of the Code of Practice reads as follows:
 

 “He who pays through error what he does not owe, has an action for the repetition of what he has thus paid, unless there was a natural obligation to make such payment; but he must prove that he paid through error, otherwise it shall be presumed that he intended to give.”
 

 This amount was not paid to Mrs. Best through error. She was the widow of the general manager of the corporation who had been connected with it since its organization, and who drew a monthly salary of $250. McGuire knew that the corporation was not
 
 *757
 
 indebted to her for the salary after the death of the employee. He says that Mrs. Best made no demand for the amount, and that he voluntarily paid it. On being asked if he had any objections to giving her the amount, he said, “No, sir, merely humanity standpoint.”
 

 He was asked, “Now then, you gave Mrs. Best the two hundred and fifty dollars voluntarily, of your own accord?” and he said, “Yes sir, in a humanitarian way.”
 

 This testimony was given on the first trial. On the second, which took place on June 10, 1930, nearly six months after the first one, his attention was called to his former testimony in which he had stated that the amount had been given Mrs. Best as an act of benevolence on his part, and was asked if that was correct, and he said, “I was giving on behalf of the company,- not as an individual, however.” He was then asked, “You gave it to her, though, as you have stated, as an act of benevolence?” He said, “From the company, yes, sir.”'
 

 Later on he contradicted himself by stating once that they, meaning the corporation, did not-, make a donation, but paid the salary for the remainder of the year, “which we found later was contrary to law.” Still further on in his testimony he was asked if it was not a fact that the amount had been paid “as an act of benevolence,” and he said, “From 'the company, yes, thinking that it was possible to clo that * * * thinking ■it was permissible to do that.”
 

 Clearly, this amount was given to Mrs. Best as a gratuity and was not paid through ■mistake or error, believing that the corporation was- a debtor.
 

 During a period of nearly a year following the payment, neither McGuire nor any one else interested in the corporation thought of demanding this amount back. But in October, 1929, just prior to the filing of this suit, McGuire was advised by counsel that the funds of a corporation could not be donated by one of its officers. That contention is made before this court, and Fletcher’s Cyclopedia of Corporations, vol. 3, p. 3225, is cited in support of it. The language of the text is as follows:
 

 “The president can not make a gift of the corporation's property.”
 

 That is true, but this donation was not in fact made by McGuire, as president, but by the corporation itself. True, he was not authorized to do so by the board of directors. But, under the circumstances, he needed no such authorization. His acts were binding upon the corporation, for the reason that the management and control of the business and affairs of the corporation had been intrusted to him as president by the board of directors without reserve. He was in full charge, with all the powers of a general manager. He testified, and his testimony is not contradicted, that the management and control of the corporation was left to him.
 

 The president of a private corporation may legally be clothed with the powers and authority of general manager, unless such powers are prohibited by the charter, He may be intrusted with the entire manage-ment of the business and affairs of the corporation, and, when such is done, his acts are virtually the acts of the corporation itself. His powers under such circumstances are coextensive with the general scope of business
 
 *759
 
 of the corporation. Fletcher on Corporations, vol. 3, p. 3202; Corpus Juris, 14a, p. 94 et seq. *
 

 Counsel cite Fletcher’s Cyclopedia of Corporations, vol. 2, p. 2148, to the effect that an ordinary business corporation is without power to give away part of its property. This is the general rule which is based upon the theory that to make gratuitous donations of the corporate property would be in violation of the rights of stockholders and members not consenting to the gift or in violation of the rights of creditors. But this general rule does not apply where no objection is made by the stockholders or creditors.
 

 “Where no objection is made either by the stockholders or creditors, it has been held that a portion of the property of a solvent corporation may be disposed of for the benefit of one of its stockholders.” 14a Corpus Juris, p. 528, § 2440.
 

 No creditor of the plaintiff corporation is here complaining of the donation made to Mrs. Best, and each and every stockholder acquiesced in the gift. Under the circumstances shown by the record, the corporation cannot recover the amount paid Mrs. Best.
 

 5. Defendant’s reconventional demand was properly rejected. Plaintiff and defendant are residents of the same parish, and therefore defendant was not entitled to institute this demand in reconvention for the reason it was not “necessarily connected with or incidental to” the main demand. Code of Practice, art. 375, and authorities cited thereunder.
 

 6. The court allowed interest from’October 11,1930. That was error. The debt sued for was due on December 1, 1928.
 

 All debts bear legal interest from the time they become due unless otherwise stipulated. Civ. Code, art. 1938; Code Prac. art. 554.
 

 For the reasons assigned, it is ordered and decreed that the judgment in favor of plaintiff and against Mrs. Ruby L. Best individually and as administratrix be amended so as to allow interest at 5 per cent, per annum from December 1, 1928, until paid, and as thus amended, it is affirmed; and further ordered that the judgment against Sirs. Best individually for $250 alleged to have been paid through error be reversed, and plaintiff’s demands as to that item are rejected and its suit dismissed. Costs of appeal to be paid by plaintiff; all other costs to be paid by defendant.