ON REHEARING
Before McBRIDE, REGAN, YARRUT, SAMUEL and HALL, JJ.
HALL, Judge.
We granted a rehearing in this matter on the applications of:
(1) The defendants, St. Paul Mercury Insurance Company and the co-executors of the Succession of Robert L. Hickerson wherein they prayed that the judgment of the trial court be reversed, or, in the alternative that the judgment rendered against them be reduced to $25,500.00.
(2) The defendant, St. Paul Mercury Insurance Company wherein it prayed for an amendment of the judgment appealed from •so as to allow to it a credit of $1,000.00.
(3)The plaintiffs, C. J. True Corporation and Aladdin Oil Company, Inc. wherein they prayed for a rehearing limited to the question of the correctness of that portion of this Court’s original decree which reduced the trial court’s judgment by $10,-000.00.
The defendant, Columbia Casualty Company, Mr. Hickerson’s notarial surety, did not apply for a rehearing.
-1-
St. Paul Mercury Insurance Company and the co-executors of the Succession of Robert L. Hickerson concede that Mr. Hickerson’s conduct would have rendered him liable had he been employed as an attorney, but they strenuously urge that the proof of his employment as such is lacking because it does not meet the requirements of LSA-R.S. 13:3722, as amended by Act 32 of 1960, which reads as follows:
“When parol evidence is admissible under the provisions of R.S. 13 :3721 the debt or liability of the deceased must be proved by the testimony of at least one credible witness other than the claimant, and other corroborating circumstances.”
While conceding that parole evidence was admissible in this case under the provisions of LSA-R.S. 13:3721, these defendants point out that the proof of Hickerson’s employment as an attorney consists solely of the parole testimony of Mr. True, President of C. J. True Corporation, Mr. Walmsley, President of Aladdin Oil Company, Inc. and Mr. Laslie, Treasurer of the latter company without any “other corroborating circumstances.” They dismiss Mr. Walms-ley’s testimony as being purely hearsay and argue that since the testimony of a corporate plaintiff’s executive in a case of this kind is considered as the testimony of the “plaintiff” (citing Southern Hide Co. v. Best, 174 La. 748, 141 So. 449), and since the claim here is the joint claim of both corporations, the testimony of Mr. True and Mr. Laslie taken together is merely that *374 of the “claimant”. It follows, they argue, that the proof adduced relative to Mr. Hickerson’s employment as an attorney does not meet the requirements of LSA-R.S. 13 :3722 in that it lacks “the testimony of at least one credible witness other than the claimant.”
We find no necessity for discussing this ingenious argument for the reason that in our opinion whether Mr. Hickerson was employed as an attorney is immaterial to the result reached in this case. However, we may say, parenthetically, that after reanalyzing the testimony we entertain some doubt (for reasons based on grounds apart from the technical point urged) that Hick-erson was employed as an attorney to examine the title and render a report thereon.
The reason why it is immaterial whether he was employed as an attorney is that the amount of damages for which Hickerson would have been liable had he been employed as an attorney is precisely the same amount for which he is liable as a notary. The basis of his liability as an attorney, if he was so employed, is the fact that he stated to plaintiffs that they were getting clear title to all fifty lots whereas seventeen of the lots had been previoitsly alienated by the vendor. The basis of his liability as a notary is that he inserted an erroneous recitation in his act of sale that the property had not theretofore been alienated by the vendor.
It is important to note that his verbal opinion as to the title was given on the date of the act of sale to wit: November 3, 1959. There is not a shred of testimony to show that Hickerson had given any opinion to plaintiffs verbal or otherwise, prior to this date. As a matter of fact plaintiffs in paragraph VII of their petition allege that this was the date of his alleged verbal opinion.
Since Mr. Hickerson is liable only for those damages that occurred by reason of plaintiffs’ reliance on his actions he cannot be held liable for any loss plaintiffs may have suffered by reason of their prepayment of $79,500.00 of the purchase price-prior to November 3rd, the date of the sale.. As an attorney he would be liable for the-loss they suffered in reliance on his verba! opinion of November 3rd. As a notary he-would be liable for the damage they suffered in reliance on the recitations in his November 3, 1959 act of sale. The amount of their damage in either case is exactly the same and as hereinafter shown we fix that damage at $35,858.70. It is therefore immaterial in our view whether or not Hick-erson was employed as an attorney. That he was employed as a notary to prepare and pass the act of sale is not disputed.
The act of sale which Hickerson, notary, prepared and passed pursuant to this employment contained the following recitation, placed by him therein:
“By reference to the certificate of the-Register of Conveyances * * * in. an for the Parish of St. Bernard, annexed hereto, it does not appear that the-said property has heretofore been alienated by the Vendor * *
This recitation was false and in direct contradiction of the conveyance certificate made reference to, which certificate showed a prior alienation by the vendor of seventeen of the fifty lots covered by the sale. This certificate was in Hickerson’s possession at the time he prepared and passed the-act and was later attached thereto by him..
It is clear to us that Hickerson’s insertion of this false recitation in his act was a breach of his official duty as a notary public. It is immaterial that he was not required by law to furnish a conveyance certificate covering property ouside of the Parish of Orleans. He actually furnished such a certificate and his breach consists of his false recitation with respect thereto.
For this breach of his official duty Mr. Hickerson is liable in damages to anyone injured thereby and the surety on his *375 notarial bond and his professional liability-insurer are liable in solido with him up to ihe amounts for which they bound themselves, to wit: $10,000.00 and $1Q0,000.00 respectively. (In this connection it is important to note that Hickerson’s professional liability policy covered his liability as a notary as well as his liability as an attorney.)
That plaintiffs were injured by the false recitation in the act cannot be disputed. Their reliance thereon resulted in payment ■of the balance due for seventeen lots which they did not receive. These lots had a value of $2,300.00 each so their actual loss on the transaction was $39,100.00 plus $358.70 taxes paid by them or a total of $39,458.70, ■for which amount judgment was rendered in their favor by the District Court.
However, Hickerson, notary, is in our ■opinion liable only for that portion of the loss which resulted from his fault. Since plaintiffs had paid the vendor $79,500.00 of the total purchase price of $115,000.00 prior to the date of the passage of the act of sale, ■only the balance amounting to $35,500.00 was paid by them upon the execution of the .act. This amount plus an item of $358.70 taxes paid, making a total of $35,858.70, is the only amount which can be said to have been paid in reliance on Hickerson’s failure to apprise them of the prior alienation of the seventeen lots, and is therefore the only loss which they sustained through his fault.
-2-
St. Paul Mercury Insurance Company, Hickerson’s professional liability insurer contends that it should be allowed a credit of $1,000.00 since its policy which is in evidence contains a $500.00 “deductible clause” applicable to each claim. In spite of the fact that this contention was made for the first time in its application for a rehearing we feel that in the interest of justice and pursuant to the authority granted by LSA-C.C.P. Art. 2164 a credit should be allowed. However, the insurer is entitled to but one deduction of $500.00 since although there are two plaintiffs there is but one claim which they make jointly.
-3-
After reconsideration we are of the opinion that we were in error in reducing by $10,000.00 the amount of damages awarded by the District Court. In our original opinion we took the position that the $10,000.00 was cancelled by “confusion” or more properly speaking by compensation or set-off. A review of the record shows the facts to be as follows: By an agreement dated August 2, 1959 one E. B. Breazeale agreed to sell the fifty lots of ground to plaintiffs. By a separate agreement dated the following day (August 3) E. B. Breazeale agreed to repurchase the property from plaintiffs and in connection with this latter agreement Breazeale put up a $10,000.00 deposit with plaintiffs. The lots which Breazeale agreed to sell to plaintiffs did not belong to Brea-zeale but to Deep River Development Corporation, a corporation of which Breazeale was president. In the act of sale before Hickerson, notary, however, Deep River Development Corporation appears as the vendor, represented by E. B. Breazeale as its president. There is therefore no doubt that in agreeing to sell the property to plaintiffs, Breazeale acted for and on behalf of the corporation. But what about Breazeale’s agreement to repurchase? This entirely separate agreement was signed by him in his personal capacity and there is nothing in the record from which an inference can be drawn that in executing this agreement he was acting for and on behalf of the corporation.
However, whether the $10,000.00 deposit was Breazeale’s money or belonged to Deep River is beside the point. Neither Brea-zeale nor Deep River are parties to this suit. Neither have claimed the return of the deposit, and whether plaintiffs are in any way obligated to return the deposit to either of them is a matter which this Court should not undertake to decide without a claim being made by them or one of them and with *376 out hearing plaintiffs’ defense to ,any such claim if made.
Since we are in no position to decide that there is any obligation on plaintiffs’ part to return the $10,000.00 deposit we are in no position to decree that Hickerson’s liability to them is compensated or set off protanto by such obligation.
For the foregoing reasons our decree on the original hearing is recalled and set aside and it is now ordered that the judgment appealed from be and it is hereby amended by reducing the total amount of damages awarded plaintiffs from $39,458.70 to the sum of $35,858.70 and by allowing to St. Paul Mercury Insurance Company a credit of $500.00 against this amount, and as so amended and in all other respects the judgment appealed from is affirmed.
Original decree set aside, judgment appealed from amended and affirmed.