STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-639 consolidated with  16-961


SUCCESSION OF JOHN PATRICK THERIOT, JR., ET AL.



**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 15421
HONORABLE KEITH R. J. COMEAUX, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, Phyllis M. Keaty, and John E. Conery, Judges.



**AFFIRMED, IN PART, REVERSED AND RENDERED, IN PART.**

**Alan K. Breaud**
**Timothy W. Basden**
**Breaud & Meyers**
**P. O. Drawer 3448**
**Lafayette, LA 70502**
**(337) 266-2200**
**COUNSEL FOR OTHER APPELLANT:**
     **Kathryn H. Theriot**

**Paul Philip Breaux, Jr.**
**Breaux & Hornstein, LLC**
**P. O. Box 116**
**St. Gabriel, LA 70776**
**(225) 642-5532**
**COUNSEL FOR OTHER APPELLEE:**
    **Lynn Jordan**

**Porteus R. Burke**
**Joseph Burke**
**Burke & Cestia**
**P. O. Box 10337**
**New Iberia, LA 70562-0337**
**(337) 365-6628**
**COUNSEL FOR OTHER APPELLEE:**
    **Pat Theriot Trust**

**Allan L. Durand**
**In Proper Person**
**235 Rue France**
**Lafayette, LA 70508**
**(337) 237-8501**
**COUNSEL FOR OTHER APPELLANT:**
    **Allan Durand, Executor**

**Edmond L. Guidry, Jr.**
**Attorney at Law**
**324 S. Main Street**
**St. Martinville, LA  70582**
**COUNSEL FOR OTHER APPELLANT:**
    **Allan Durand, Executor**

**Mark N. Mallery**
**Jacob C. Credeur**
**Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
**701 Poydras St., Ste 3500**
**New Orleans, LA 70139**
**(504) 648-3840**
**COUNSEL FOR OTHER APPELLANT:**
    **State Farm Mutual Auto Ins. Co.**

**SAUNDERS, Judge.**

These appeals arise from a dispute over the correct recipient of a decedent's initial termination and extended termination payments from his employment as an insurance agent. The trial court found that the corporate agent was the correct recipient of the initial termination payments while no party had shown it was eligible for the extended termination payments. The executor of the estate, the insurance agency, and the decedent's wife have all appealed.

**FACTS AND PROCEDURAL HISTORY:**

Pat Theriot (the decedent) worked as an insurance agent for State Farm Mutual Automobile Insurance Company (State Farm) since 1981. In 1994, the decedent formed a corporation named Pat Theriot Insurance Agency, Inc. (the corporation). The decedent was the sole shareholder and served as President while the corporation was referred to as the agent of State Farm. The 1994 Agreement provided for sixty monthly termination payments to start when it was terminated. These are known as the initial termination payments. Extended termination payments would begin on the 61st month after termination of the 1994 Agreement and would continue until the month of the decedent's death. A joint and survivor option could replace the applicable terms for entitlement to these extended termination payments by amendment prior to the decedent's death.

The decedent had been married three times prior to meeting his wife at the time of his death, Kathryn Hempel Theriot (Ms. Theriot). The decedent had several children from his previous marriages, all of whom are adults at the time of these suits. The decedent and Ms. Theriot were married on October 10, 2012. In the summer of 2013, the decedent's failing health was evident, and he was given three months to live. The decedent passed away on September 6, 2013.

Prior to his death, the decedent met with his attorney, Allan Durand, whom he named as executor of his estate (the Executor). The decedent named Mr. Durand the Executor in his last will and testament. The decedent revised his previously prepared testament to include provisions for Ms. Theriot.

In the decedent's Last Will and Testament and codicil that were executed on August 2, 2013, and September 3, 2013, respectively, the following provision at the heart of this dispute states, "3.2(B) Any termination payment due to me or my estate from State Farm shall go to my wife, Kathy." The residuary estate, except for a bequest to the decedent's sister not relevant to these proceedings, was to be left in trust for the decedent's children. This trust was also made the beneficiary of the decedent's life insurance proceeds.

The decedent also contacted State Farm to sign additional paperwork in order for both the initial and extended termination payments would go to Ms. Theriot. Jarrod Landry, a representative of State Farm's from the Dallas regional office, brought documents for the decedent to sign to ensure Ms. Theriot would receive the termination payments.

The decedent signed all of the documents provided to him during this meeting on August 28 (the August 28th Documents). The decedent entered into the early notification program, under which a State Farm Agent may give advance notice of retirement and be immediately eligible to assign the termination payments. These documents provided that the decedent would retire no later than August 31, 2014, qualified the decedent for the extended termination payments, qualified the decedent to receive a reduced extended termination payment for the rest of his life in exchange for the reduced extended termination payments to continue for the rest of Ms. Theriot's life, and assigned all of the corporation's rights to the extended termination payments to the decedent. State Farm asked the

2

decedent to delay his retirement date. The decedent passed away the following week on September 6, 2013.

On November 22, 2013, the executor filed a petition for partial possession and/or interim allowance seeking to recognize Ms. Theriot as the recipient of the termination payments. The trust responded that, as residual legatee and owner of the corporation, it was entitled to the termination payments because they were owed to the corporation.

After learning there was a dispute between Ms. Theriot and the trust, State Farm filed a concursus petition as an intervenor. The executor had previously filed a separate petition against State Farm. The trust and Ms. Theriot both answered the concursus asserting claims to the initial termination payments. Ms. Theriot additionally filed a petition for intervention into the succession proceeding seeking to be recognized as the proper recipient of the termination payments. State Farm's concursus petition was eventually denied and dismissed after a trial was held determining the proper party to receive the termination payments.

The executor filed a petition for reformation of contracts seeking to reform the August 28th documents to reflect the joint intent of the parties and also praying for relief on the alternative ground that the decedent relied on Jarrod Landry's assurance to the decedent that the August 28th documents would successfully transfer the termination payments to Ms. Theriot. A supplemental and amended petition for reformation of contracts was subsequently filed.

The trust filed a motion for summary judgment seeking to be declared the owner of the termination payments. This motion was opposed by Ms. Theriot and the executor. The trial court denied this motion.

Ms. Theriot filed a motion for summary judgment seeking to have the trial court find that she was entitled to the termination payments. Her motion was denied as well.

Prior to trial, the trust filed a motion in limine to exclude all parol evidence from trial, which was opposed by Ms. Theriot and the executor. The motion in limine was granted, and the trial court ordered the exclusion of all evidence concerning the circumstances surrounding the drafting of the decedent's last will and testament and the execution of the August 28th documents. A motion for reconsideration was also filed and denied.

The case went to trial. On May 5, 2015, the trial court dismissed the executor's petition for reformation, denied relief for detrimental reliance, ruled that under the decedent's will, the initial termination payments should go to the trust via its ownership of the corporation. Further, the trial court ruled that the extended termination payments were not owed to anyone because the extended termination payments were not owed to the decedent at the time of his death and were not payable under the August 28th documents since the decedent passed away before the retirement date specified in the early notification program enrollment document.

The executor filed a timely motion for new trial which was denied. The trial court signed an order granting State Farm's suspensive appeal. The trial court then signed an order granting the executor's devolutive appeal. Ms. Theriot was also granted a devolutive appeal by the trial court.

Next, the trial court signed an order granting State Farm's devolutive appeal of the separate judgment denying and dismissing its petition-in-intervention for concursus. Thereafter, the trial court signed an order consolidating the appeals filed by the executor, Ms. Theriot, and both appeals filed by State Farm. This

court then issued an order stating that the trial court erred in consolidating appeals and ordered separate appeals. Those separate appeals were then consolidated by this court.

## KATHRYN THERIOT'S ASSIGNMENTS OF ERROR:

1. The trial court erred as a matter of law in refusing to consider "all competent evidence" in the interpretation of the Last Will and Testament of Pat Theriot.

2. The trial court erred as a matter of law in its refusal to admit parol evidence, or any evidence at all, on the Petition to Reform Contracts.

3. The trial court erred as a matter of law in its ruling that the State Farm initial termination payments were payable to the Pat Theriot Trust under the language of the Last Will and Testament of Pat Theriot.

4. The trial court erred as a matter of law in its ruling that State Farm had no obligation to pay extended termination payments to Kathy Theriot, as Pat Theriot's surviving spouse and designated beneficiary.

5. If the State Farm contract documents signed on August 28, 2013 were insufficient to assign all termination payments to Kathy Theriot, the trial court erred in failing to reform the contract documents to accomplish the stated intent of the parties at the time the documents were executed.

6. The trial court erred in failing to place Kathy Theriot in possession of both Pat Theriot's initial and extended termination benefits from State Farm.

## EXECUTOR'S ASSIGNMENTS OF ERROR:

1. The District Court was in error in failing to follow the clear language of Pat's will by ruling that Pat Theriot's bequest that "*any termination payment due to me or my estate from State Farm shall go to my wife, Kathy*" had no effect whatsoever.

2. The District Court was in error in ruling that it was Pat's intent that the termination payments were to be inherited by the Trust, and not by Pat's wife, Kathy.

3. The District Court was in error in refusing to admit parol evidence offered by the Executor on the issue of Pat's intent in using the phrase ". . .due to me, *or my estate*. . .", after having admitted parol evidence offered by other parties as to Pat's intent.

5

4. If the District Court was <u>not</u> in error in failing to give any effect to Pat's bequest of the Termination Payments to his wife, then the District Court was in error in refusing to treat the Will as an "assignment."

5. The District Court was in error in ruling that the "August 28 documents" did not result in the assignment of the Extended Termination Payments to Kathy, and in not interpreting the documents in the method most favorable to the non-drafter.

6. The District Court was in error in not reforming the August 28 contracts to reflect the intent of the parties, i.e., to assign <u>both</u> the Initial Termination Payments <u>and</u> the Extended Termination Payments to Kathy.

7. The District Court was in error in failing to allow parol evidence in support of the Petition to Reform the Contracts, and in failing to reform the contracts to reflect the intent of the parties.

8. The District Court was in error in refusing to allow parol evidence in support of the claim of detrimental reliance, and in denying the claim of detrimental reliance by Pat upon the representations of State Farm.

9. The District Court was in error in ruling that the Termination Payments should not go to Kathy, for the reason that Pat relied to his detriment on the representations of State Farm.

10. The District Court was in error in failing to admit the parol evidence that State farm accepted Pat's will as a valid transfer of the termination payments to Kathy.

## STATE FARM'S ASSIGNMENTS OF ERROR:

1. The District Court erred when it determined that the record was supported by sufficient evidence to indicate State Farm owed Termination Payments under Section IV of the 1994 State Farm Agent's Agreement signed by John Patrick Theriot to the Testamentary Trust of John Patrick Theriot, Jr.

2. The District Court erred when it refused to allow State Farm to introduce evidence in support of its Concursus Petition at the May 5, 2015, trial, thereby improperly increasing State Farm's risk of double recovery in this proceeding (hence, leaving State Farm no choice but to suspensively appeal the July, 20, 2015, Judgment).

3. The District Court erred when it concluded contractual Section IV Termination Payments, any entitlement to which was not triggered until Pat Theriot's death but which have also been held by this Honorable Court to be contingent contractual payments that do not

and cannot become payable until other conditions are satisfied after termination of the contract, ever became part of Pat Theriot's estate.

4. The District Court erred when it placed on State Farm the burden of proving the absence of contractual conditions precedent to receipt of Termination Payments.

5. The District Court erred when it held State Farm's Concursus Petition could be relied upon as a "judicial confession" even though the District Court denied and dismissed that same Concursus Petition and even though State farm never earned the benefit of or any relief from that same Concursus Petition.

6. There was no evidence presented at trial that the post-termination contractual prerequisites to receipt of Section IV Termination Payments were satisfied, and the District Court erred in finding these conditions were met.

7. The District Court erred when it failed to allow State Farm to present evidence on its Petition-in-Intervention for Concursus at the May 5, 2015, trial.

8. The District Court also erred when it denied and dismissed State Farm's Petition-in-Intervention for Concursus in light of the fact that there are distinctly competing claims to termination payments allegedly owed by State Farm to multiple parties in the Succession of John Patrick Theriot.

9. The District Court failed to properly recognize that State Farm, as the party responsible for making the termination payments allegedly owed, was or has been exposed to multiple claims and suits from Concursus Defendants, who have asserted an interest to all or a portion of the termination payments.

10. The District Court also erred in failing to grant all of the relief prayed for in State Farm's Petition-in-Intervention for Concursus, including dismissal of State Farm and precluding other parties from bringing claims against State Farm.

## DISCUSSION OF THE MERITS:

All of the assigned errors above can be combined into core contested issues. They are: (1) whether the trial court properly excluded parol evidence concerning the decedent's will; (2) whether the trial court properly awarded the initial termination payments to the trust via its ownership of the corporation under the terms of the decedent's will; (3) whether the trial court properly found that State

Farm did not potentially owe any extended termination benefits; and (4) whether the trial court properly denied and dismissed State Farm's petition-in-intervention for concursus. As such, rather than specifically address the multitude of repetitive assigned errors, we will adjudicate the pertinent issues in this matter.

***Did the trial court properly exclude parol evidence concerning the will?***

Ms. Theriot asserts that the trial court erred by refusing to consider all competent evidence under La.Civ.Code art. 1611(A) in the interpretation of the decedent's will. Likewise, the executor contends that the trial court erred by refusing to admit parol evidence on the issue of the decedent's intent in using the phrase ". . .due to me or my estate. . ." in the will after having admitted parol evidence offered by other parties as to the decedent's intent.

Louisiana Civil Code Article 1611(A)(emphasis added) states:

> The intent of the testator controls the interpretation of his testament. If the language of the testament is clear, its letter is not to be disregarded under the pretext of pursuing its spirit. The following rules for interpretation apply *only* when the testator's intent cannot be ascertained from the language of the testament. In applying these rules, the court may be aided by any competent evidence.

Thus, in order for the proffered parol evidence to be considered by this court, the language of the relevant provision of the will must fail to clearly express the decedent's intent, i.e., it must be ambiguous. The determination of whether language is ambiguous is a question of law. *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-911 (La. 1/4/94), 630 So.2d 759. Questions of law are reviewed by appellate courts via a de novo review as to whether the determination was legally correct. *Citgo Petroleum Corp. v. Frantz*, 03-88 (La.App. 3 Cir. 6/4/03), 847 So.2d 734, *writ denied*, 03-1911 (La. 10/31/03), 857 So.2d 484. "Language is ambiguous when it can be reasonably interpreted to mean

different things." *Adams v. Willis*, 00-589, p. 5 (La.App. 3 Cir. 11/2/00), 777 So.2d 5, 9, *writ denied*, 00-3289 (La. 2/2/01), 784 So.2d 7.

The language relevant here is the first sentence of provision 3.2(B) in the decedent's will. It reads, "Any termination payment due to me or my estate from State Farm shall go to my wife, Kathy." Ms. Theriot and the executor contend that the language indicated the decedent's clear intent to convey to Ms. Theriot both types of termination payments. Contrarily, the trust contends that the language, specifically where the will states "to me or my estate," indicates that the decedent's intent was to convey the termination payments to the trust because the decedent knew that the termination payments are payable to the corporation and that the trust inherited the corporation via its status as the universal legatee.

It is clear from the arguments above that the language in the provision can reasonably be interpreted to mean different things. As such, we find that the trial court improperly excluded "any competent evidence," under La.Civ.Code art. 1611(A), to aid in finding the intent of the testator when having his will drafted. Accordingly, we find that the trial court committed legal error.

"[W]hen a provision in a will is subject to more than one equally reasonable interpretation, then the court may consider all circumstances existing at the time of the execution of the will (and not just the language of the will) which may aid in determining the intent of the testator." *Succession of Williams*, 608 So.2d 973, 975 (La.1992). Therefore, we will look to the record, proffered competent evidence, and "any and all circumstances existing at the time of the execution of the will" in order to determine the decedent's intent in the first sentence of provision 3.2(B). *Id.* Because the language of provision 3.2(B) can reasonably be interpreted to mean different thing, i.e., it was ambiguous, we found that the trial court improperly excluded "any competent evidence" under La.Civ.Code art. 1611(A). As such, we

will consider the record and any improperly excluded evidence in order to ascertain the decedent's intent with respect to the initial termination benefits.

***Did the trial court properly award the Initial Termination Payments to the trust?***

Ms. Theriot contends that the trial court erred as a matter of law in its ruling that the initial termination payments were payable to the trust under the decedent's will. The executor asserts that the trial court was in error in ruling that it was the decedent's intent that the initial termination payments were to be inherited by the trust and not Ms. Theriot. We find that these arguments have merit.

"[T]he first and natural impression conveyed to the mind on reading the will as a whole is entitled to great weight. The testator is not supposed to be propounding riddles, but rather to be conveying his ideas to the best of his ability so as to be correctly understood at first view." *Carter v. Succession of Carter*, 332 So.2d 439, 442 (La.1976). When the language of a will is unclear, acts done by the testator after the will's execution may be taken into consideration in ascertaining his intent. *Succession of Ehrenberg*, 21 La.Ann 280 (La. 1869); *Clark v. Preston*, 2 La.Ann. 580 (La. 1847). "A disposition should be interpreted in a sense in which it can have effect, rather than in one in which it can have none." La.Civ.Code art. 1612. "It is a cardinal rule of testamentary construction that each and every part of the will shall be given effect; no word, phrase or clause shall be declared surplusage if it can be afforded a reasonable and legal interpretation." *Succession of Lambert*, 210 La. 636, 657, 28 So.2d 1, 8 (1946).

In the case before us, the decedent used the language, "[a]ny termination payment due to me or my estate from State Farm shall go to my wife, Kathy." This is a positive expression of the decedent's seeming intent that his wife get any termination payments. As such, this court's first and natural impression is that the decedent intended for Ms. Theriot to get any termination payments.

10

The trust points out that the decedent's use of the language "due to me or my estate" is indicative that he wanted the trust to get the initial termination payments because the decedent knew that he, personally, was not due any initial termination payments. Rather, as found by the trial court and argued by the trust, the decedent knew that the corporation was due the initial termination payments and used this language to purposefully leave the initial termination payments to the trust because he knew that the trust would obtain ownership of the corporation via its status as universal legatee.

We find no merit to the trust's argument and find error by the trial court in reaching this conclusion regarding the decedent's intent. The trial court's finding necessitates the decedent leaving a riddle by using superfluous language specifically naming Ms. Theriot in order to allow the trust to inherit the initial termination payments through its ownership of the corporation via its designation as the universal legatee. Had the decedent truly intended to leave the initial termination payments to the trust, he could have directly granted them to the trust via a specific legacy or by not mentioning termination payments.

Moreover, the testimony of Mr. Jarrod Landry, an agency sales leader for State Farm, certainly tends to indicate that the decedent's intent was for Ms. Theriot to receive both types of termination benefits. Mr. Landry testified to the following regarding the decedent's state of mind in August of 2013, the month the decedent's will was written:

Q      Okay. You met with Pat, [the decedent,] at his home about August 28th of [2013]; is that correct?

A      As I recall.

Q      All right. Did Pat ask you - - tell you he wanted something and asked you to bring the paperwork or did some other person at State Farm tell you to go to Pat's house and what to bring with you? How did that happen, how did that meeting happen?

11

A       Pat's intention from the beginning was for his retirement funds, his retirement, his agency retirement to go to Kathy Theriot, and so he requested that I do whatever it took to make sure that took place.

Q       All right.  He made that request directly to you?

A       He did.

Q       All right.  He told you he wanted his retirement to go to his wife, Kathy?

A       Correct.

Q       All right. And did he ask you if he needed to sign anything to accomplish that?

A       He asked me to do whatever it took to do that, and that is what I did.  I did what I had to do within my responsibility to make sure that what he wanted took place.

        . . . .

Q       Okay.  Pat told you he wanted to assign the retirement benefits to Kathy; am I correct?

A       Correct.

Q       And you passed that on to agency ASR [corporate State Farm]?

A       Correct.

Q       And they sent you these forms and said, "Go have him sign these".

A       Correct.

Q       You were given the understanding this would accomplish what Pat wanted.

A       That was my understanding.

        . . . .

Q       All right.  Am I correct that it was your understanding that the documents Pat signed on August 28th  which are in front of you and part of Exhibit 1 - - Was it your understanding that those documents were going to be sufficient to transfer to his wife, Kathy, both his termination payments?

12

A    Pat's intention was for his retirement termination payments, his extended termination payments to go to Kathy.

Q    Both of them.

A    Both of them.

Q    The termination payments and the extended termination payments.

A    Correct.

Q    And when you met with Pat did you tell him that, "These documents are what you need to sign to transfer your termination payments and your extended termination payments to Kathy"?

A    Yes. My understanding was that these documents were sufficient and that is what I explained to him when we completed and signed the documents.

This testimony evidences Mr. Landry's understanding of the decedent's intent. This testimony as to the decedent's intent for Ms. Theriot to receive both types of termination payments is bolstered by the actions of the decedent during the same month he signed his will. He contacted State Farm in an attempt to achieve the result of Ms. Theriot receiving both types of termination payments. Then, he actually signed the paperwork he thought necessary to do so. Thus, in executing the August 28th documents, we find that the decedent made his intent clear.

Accordingly, we find that the trial court was legally incorrect in finding that the decedent intended to leave the initial termination payments to the trust. It is clear from the record and the decedent's actions during the relevant time frame that he intended to leave the initial termination payments to Ms. Theriot.

However, the analysis of who is entitled to the initial termination payments does not end with finding the decedent's intent. The trust argues that the decedent could not leave the initial termination payments to Ms. Theriot because they were the property of the corporation.

13

An officer of a private corporation may legally be clothed with the powers and authority of a general manager. He may be entrusted with the entire management of the business and affairs of the corporation and, when such is done, his acts are virtually the acts of the corporation itself. Fletcher on Corporations, vol. 3, p. 3202; 19 C.J.S. Corporations § 756 p. 99; *Southern Hide Co. v. Best*, 174 La. 748, 141 So. 449 (1932). Also see *Russ v. United Farm*, 230 La. 889, 89 So.2d 380; *City Savings Bank and Trust Co. v. Shreveport Brick Co., Inc.*, 172 La. 471, 134 So. 397.

*Medallion Tower, Inc. v. Fort Lauderdale Technical College, Inc.*, 323 F.Supp. 180 (E.D. La.1970).

Here, the decedent was the sole shareholder, sole officer, and sole board member of the corporation. As stated above, his actions regarding any property or potential receivables due the corporation were binding on the corporation. Accordingly, his statement that "[a]ny termination payment due to me or my estate from State Farm shall go to my wife, Kathy" includes any termination payments due the corporation.

Therefore, we find that the initial termination payments are to be paid to Ms. Theriot, as the decedent intended.

***Did the trial court properly find that State Farm had no duty to pay any Extended Termination Payments?***

Both Ms. Theriot and the executor assert that the trial court erred when it failed to find that the August 28th documents executed by the decedent and State Farm warranted Ms. Theriot be awarded the extended termination benefits. We find merit to these assertions.

> Where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown. However, when appellate review is not premised upon any factual findings made at the trial level, but is, instead, based upon an independent review and examination of the contract on its face, the manifest error rule does not apply. In such cases, appellate review of questions of law is simply whether the trial court was legally correct or legally incorrect. (citations omitted).

14

*Evangeline Parish Sch. Bd. v. Energy Contracting Servs, Inc.*, 617 So.2d 1259, 1265 (La.App. 3 Cir.), *writ denied*, 624 So.2d 1228 (La.1993) (quoting *Borden, Inc. v. Gulf States Utils. Co.*, 543 So.2d 924, 928 (La.App. 1 Cir.), *writ denied*, 545 So.2d 1041 (La.1989)).

"When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046. "Language is ambiguous when it can be reasonably interpreted to mean different things." *Adams*, 777 So.2d at 9. Where an ambiguity remains even after methods of contractual interpretation are employed, "the ambiguous provision is to be construed against the drafter and in favor of the insured." *Reynolds v. Select Props., Ltd.*, 93-1480 (La. 4/11/94), 634 So.2d 1180, 1183.

In the case before us, when dealing with extended termination payments, Section V of the 1994 agreement between the corporation and State Farm states that State Farm "will pay the Agent monthly payments beginning on the last day of the 61st month following termination and continuing until the last day of the month in which the death of the President occurs. . . ." The decedent, personally and on behalf of the corporation, and State Farm signed five documents on August 28, 2013. Those five documents were an Early Notification of Program Enrollment, a Termination Payment Amendment, an Extended Termination Payment Amendment, an Irrevocable Assignment of Extended Termination Payments, and an Election to Receive Extended Termination Payments Under the Joint and 66 2/3% to Survivor Option.

The parties stipulated that the decedent met the requirements to receive extended termination payments. However, the trial court found that no extended termination benefits were due to the decedent or Ms. Theriot because the decedent

15

chose a date of termination of the agreement as either September 30, 2013, or August 31, 2014, and he died on September 6, 2013. We find error by the trial court in reaching this conclusion.

All parties and the trial court agree that the 1994 Agreement terminated on the date of decedent's death, September 6, 2013. The disagreement is whether there was still a requirement that the decedent terminate the 1994 Agency Agreement prior to his death in order to have the August 28th documents have any effect on the extended termination payments. We find that the August 28th documents mandate that Ms. Theriot is to receive the extended termination benefits should she be living when they become due.

The Early Notification Program Enrollment document was signed by the decedent and received by State Farm on August 26, 2013. It notified State Farm of the decedent's date of retirement with a date of August 31, 2014. Todd Romig, the assistant manager for agency sales resources at State Farm, testified to the following:

> Q . . . Does a retirement date recorded by anybody with State Farm make any difference whatsoever as long as he signed it, this early notification program enrollment, before his death?
>
> A No, it does not.
>
> Q The face that [the decedent] signed Exhibit 1 allows him to sign these other documents, particularly the Election to Receive Extended Termination Payments Under the Joint and 66-2/3 to Survivor Option?
>
> A Correct.

Thus, it is clear that the decedent was able to execute the August 28th documents immediately after enrolling in the early termination program. As such, we will look to these documents to determine what effect, if any, they had on the extended termination payments.

16

The Extended Termination Payment Amendment states:

> WHEREAS, there exists a State Farm Agent's Agreement . . . ("Agreement") between the corporation known as PAT THERIOT INSURANCE AGENCY, INC. of Saint Martinville, LA ("Agent"), and the undersigned State Farm Insurance Companies ("Companies");
>
> WHEREAS, Section V of the Agreement provides for extended termination payments under certain conditions in the event the Agreement is terminated;
>
> AND WHEREAS, Agent has met the requirements of the Early Notification Program;
>
> NOW THEREFORE, the Companies and Agent agree:
>
> 1. If, as of the date the Agreement is terminated; the President of Agent is 55 years of age or older and:
>
>     (a) has met all but the age requirement for the receipt of extended termination payments, or
>
>     (b) has a combination of age and length of Agency Service equal to or greater than 80 years and has met all but the age and length of service requirement for the receipt of extended termination payments,
>
>     Agent shall be eligible for extended termination payments calculated in accordance with the formulas set forth in Section V. of the Agreement.
>
>     . . . .
>
> 3. If Agent assigns its rights to extended termination payments to the President of Agent, the Joint and Survivor Option will be available to President of Agent.

The Extended Termination Payment Amendment was signed by both State Farm and the decedent, individually, and on behalf of the corporation on August 28, 2013. Our reading of the Extended Termination Payment Amendment is State Farm and the decedent agreed that when the 1994 Agreement is terminated, if certain listed criteria were met (which all parties stipulated the decedent met), then the decedent "shall be eligible for extended termination payments." Thereafter, the Extended Termination Payment Agreement states that if the corporation assigns its

17

rights to the extended termination payments to the decedent, then the decedent can choose the joint survivor option.

On that same date, the decedent then signed the Irrevocable Assignment of Extended Termination Payments. It states, "Agent [Pat Theriot, Inc.] does hereby irrevocably transfer, assign, and set over all right, title and interest to and in the payments provided for under the terms of Section V of the Agent's Agreement to its President, absolutely." Therefore, the document purported to give the decedent, individually, the right to direct who would receive the Extended Termination Payments. State Farm signed this document on February 20, 2014.

Thereafter, the decedent signed the Election to Receive Extended Termination Payments Under the Joint and 66 2/3% to Survivor Option. It designates Ms. Theriot as a joint beneficiary of those extended termination payments stating, "I further understand that in the event of my death or the death of my joint beneficiary, the survivor will receive 66-2/3% of the amount payable prior to the death of the first to die for his or her lifetime." This document was signed by State Farm on February 20, 2014.

The executor and Ms. Theriot argue that the August 28th documents amended the 1994 original agreement. As such, they point out that these August 28th documents neglected to include the requirement that the decedent terminate the 1994 agreement via retirement prior to becoming eligible for extended termination payments. The trial court disagreed finding that the decedent was required to terminate the agreement via retirement under the 1994 agreement's terms prior to the August 28th documents having any effect. As such, the trial court found that the decedent never became eligible for extended termination payments because he died prior to his designated date of retirement, i.e., when the 1994 agreement would have been terminated.

18

The August 28th documents are clear. State Farm allows for participation in the program in order to reduce the amount it will have to pay to its former agents in extended termination payments in exchange for the agents selecting to add his or her spouse as a beneficiary. There is no requirement in the August 28th documents that the termination of the relationship between State Farm and Pat Theriot must come from retirement.

State Farm argues that it is significant that the decedent died prior to some of the August 28th documents being signed by it. The basis of State Farm's argument is that the August 28th documents were offers by the decedent and were not accepted by State Farm until after the decedent's death. Given that an offer dies with the party making the offer, see La.Civ.Code art. 1932, State Farm argues that these contracts were not valid. This argument lacks merit.

These contracts were prepared by State Farm to accomplish the decedent's specific goal of having Ms. Theriot receive his extended termination payments.

> It has long been held by our courts that a party who prepares the contract and presents it to the other party for their signature may not later claim he is not bound by the contract because his signature is lacking. *Auto–Lec Stores, Inc. v. Ouachita Valley Camp, No. 10, W.O.W.*, 185 La. 876, 883, 171 So. 62, 64 (1936); *Finishers Drywall, Inc. v. B & G Realty, Inc.*, 516 So.2d 420, 422 (La. Ct.App. 1 Cir.1987).

*Rainey v. Entergy Gulf States, Inc.*, 09-572, p. 18 (La. 3/16/10), 35 So.3d 215, 227.

In the cases cited by *Rainey* and in *Rainey*, itself, the courts enforced the contracts even though they were not signed by the preparer of the contract. Here, the contracts were, in fact, signed by State Farm, just not until a date after the decedent's death. Accordingly, we find no merit to this argument.

The decedent chose to exercise his right to participate in State Farm's early notification program. In doing so, the options that he chose, altering the requirements for eligibility for the extended termination payments, assigning the

extended termination benefits to himself, and adding his wife as a beneficiary under the joint survivor option, immediately became effective once he signed the documents. Thereafter, when State Farm signed the documents, it only served to reinforce its assent to the terms of the contracts it prepared to reach the decedent's goals. The decedent chose to exercise those options, and, under the clear language of the August 28th documents, chose to have the extended termination payments go to Ms. Theriot.

Moreover, we note that it is clear from the record that both the decedent and State Farm believed that once these August 28th documents were executed, Ms. Theriot would receive the extended termination benefits when they became due.

***Did the trial court properly adjudicate State Farm's Petition-in-Intervention for Concursus?***

State Farm asks this court to reverse the trial court's ruling and order denying its petition-in-intervention for concursus. State Farm also asks that we order that it be granted the opportunity to deposit any funds that may be determined to be owed in this matter into the court's registry, that it be dismissed from these proceedings entirely, and that it be granted an injunction from any further prosecution of any claims by any party in this matter.

The trial court denied State Farm's concursus request as not timely or proper given that it had already determined that the corporation was entitled to the initial termination benefits. We find that this matter is moot. Allowing State Farm to deposit funds into the registry and to be dismissed is of no consequence because we have determined that Ms. Theriot is the proper recipient of all the termination benefits.

## DISPOSITION:

Kathryn Hempel Theriot, Executor Allan Durand, and State Farm Mutual Automobile Insurance Company all assigned errors in this case. We find that the trial court improperly excluded parol evidence in ascertaining Pat Theriot's intent in making his will. We find merit to those assignments contending that the trial court erred in awarding the trust, via ownership of Pat Theriot Insurance Agency, Inc., initial termination payments. We render judgment declaring that the proper recipient of those initial termination payments is Kathryn Hempel Theriot. Further, we find merit to those assignments of error asserting that the trial court erred in denying that State Farm Mutual Automobile Insurance Company potentially owes anyone extended termination payments. We render judgment holding that those extended termination payments are owed to Kathryn Hempel Theriot. Finally, we affirm the trial court's denial of State Farm Mutual Automobile Insurance Company's petition-in-intervention for concursus. All costs of these proceedings are assessed to Pat Theriot Insurance Agency, Inc.

**AFFIRMED, IN PART, REVERSED AND RENDERED, IN PART.**