SUCCESSION OF BONNY BABIN MALONEY

NO. 22-CA-571

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 806-605, DIVISION "K"
HONORABLE ELLEN SHIRER KOVACH, JUDGE PRESIDING


October 04, 2023


**SUSAN M. CHEHARDY**
**CHIEF JUDGE**


Panel composed of Judges Susan M. Chehardy,
Marc E. Johnson, and John J. Molaison, Jr.


**<u>AFFIRMED</u>**
  **SMC**
  **MEJ**
  **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
CRAIG STEWART MALONEY, EXECUTOR OF THE SUCCESSION OF
BONNY BABIN MALONEY
    Patrick S. McGoey
    Andrea V. Timpa
    McClain R. Schonekas

COUNSEL FOR PLAINTIFF/APPELLANT,
KURT B. MALONEY
    Michael G. Calogero

COUNSEL FOR PLAINTIFF/APPELLEE-2ND APPELLANT,
ROBERT S. MALONEY, JR.
    Jason R. Anders
    J. Scott Loeb
    Lauren F. Bartlett

**CHEHARDY, C.J.**

Appellants, Robert S. Maloney, Jr. and Kurt Maloney, separately appeal the trial court's June 30, 2022 judgment, which granted a motion for partial summary judgment in favor of their brother, Craig S. Maloney, in his capacity as the executor of the succession of their mother, Bonny Babin Maloney, resulting in the disinherison of appellants pursuant to a no-contest clause contained in their deceased mother's last will and testament. For the reasons discussed more fully below, after *de novo* review, finding the trial court's conclusion was legally correct and supported by the undisputed facts, we affirm the trial court's judgment.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Bonny Babin ("Bonny") married Robert S. Maloney, Sr. ("Robert Sr."), and of the marriage five children were born: Robert S. Maloney, Jr. ("Robert"), Kurt Maloney ("Kurt"), Craig Maloney ("Craig"), Jeanie Maloney (deceased), and Julie Maloney Wenck ("Julie"). During the course of their marriage, Robert Sr. and Bonny successfully operated several businesses and invested in real estate, accumulating significant wealth. The children eventually joined the family business and worked together in various business enterprises thereby increasing the family's overall wealth.[1] The family members continued in business together until the demise of Robert Sr. on June 2, 2019.

Robert Sr. executed a notarial will ("Will") on December 21, 2012, which did not contain a "no contest clause." During the year prior to his death, Robert Sr. executed three codicils to his Will, each in notarial form, on June 15, 2018, August 28, 2018, and February 26, 2019, respectively.[2] The first codicil increased the property bequeathed to Bonny, including Robert Sr.'s one-half community interest

---

[1] According to the record, while their parents were still alive, the family's relationship with Robert Jr. and Kurt began to deteriorate due to their alleged theft from family businesses and because of their alleged failure to assist Robert Sr. in caring for Bonny following a cancer diagnosis.

[2] A codicil is an addition or qualification to a will and is considered part of the will. *Succession of Laborde*, 17-1334 (La. App. 1 Cir. 5/31/18), 251 So.3d 461, 463.

in the family home, and added a no-contest clause; the second codicil included additional bequests to Bonny, slightly reducing the inheritances of Robert Jr. and Kurt;[3] and the third made changes to the successor executors, in the event Bonny became unable to serve as executrix of his estate. Robert Sr. died on June 2, 2019. As his surviving spouse, Bonny opened Robert Sr.'s succession on June 16, 2019, in the Twenty-Fourth Judicial District Court, Parish of Jefferson, case number 796-214, *Succession of Robert S. Maloney, Sr.*, where the matter remains pending, and was confirmed independent executrix. Bonny served as the independent executrix of Robert Sr.'s estate until her death on May 4, 2020.

On August 7, 2019, prior to Bonny's death, a judgment of partial possession was rendered in Robert Sr.'s succession, that placed Bonny in possession of numerous assets, including community property bequeathed to her in the first two codicils of Robert Sr.'s Will. In particular, the trial court recognized Bonny as the legatee in full ownership of Robert Sr.'s separate property,[4] and placed Bonny in possession Robert Sr.'s one-half interest in certain community assets, including the family home at 185 Ridgewood Drive in Metairie, as well as various bank accounts and accounts receivable. Consequently, on August 7, 2019, when the judgment of partial possession was rendered in Robert Sr.'s succession, the family home on Ridgewood Drive and other assets belonged solely to Bonny, in full ownership, and formed a portion of her estate.

Approximately seven weeks later, on September 24, 2019, Bonny executed a new Last Will and Testament ("Testament") to include the assets she inherited from Robert Sr. that now comprised a part of her estate. Execution of the Testament was video recorded. Craig was named as independent executor of

---

[3] The second codicil also left property located in Pearl River County, Mississippi, to Craig; however, this property had previously been transferred *inter vivos* to Craig on June 13, 2018.

[4] Bonny was placed in possession in full ownership of Robert Sr.'s shares of stock in Maloney Trucking & Storage, Inc.

Bonny's estate. In her Testament, the family home is listed as a separate property asset of Bonny valued at 1.1 million dollars, which Bonny bequeathed, in full ownership, to her daughter, Julie. One quarter of Bonny's residuary estate was bequeathed to each of her four surviving children. Bonny's new Testament also included a no-contest clause, which specifically disinherits and revokes any legacy to any legatee or heir who contests or challenges her Testament, or who seeks to impair or invalidate any provision of her Testament, *or* "is otherwise engaged in a controversy with or against the Executor of [Bonny's] estate and which concerns her estate."

In the event of a violation, the no-contest clause mandates that:

> … all legacies, bequests, and interests devolving as a result of [Bonny's] death to any such person(s) who has/have done or attempted to do any of the acts described in sections (a) through (d) of this Article 13.1 (hereinafter the 'Challenger,' whether one or more) is hereby revoked; and said legacies, bequests, and interests shall not devolve to heirs of said Challenger, rather said revoked legacies, bequests, and interest shall become part of [Bonny's] Residuary Estate …

Bonny died on May 4, 2020. On May 22, 2020, Craig Maloney was confirmed as independent executor of his father's succession, succeeding Bonny in this position. On May 27, 2020, Bonny's Testament was probated and Craig was also confirmed as the independent executor of her succession. Bonny and Robert Sr.'s successions remain open, and Craig remains the executor in each.

On August 7, 2020—exactly one year to the day after Bonny was placed in possession as the full owner of the Ridgewood property and other assets, and three months after *her* death—Robert Jr. and Kurt filed a petition in their father's succession to annul the three probated codicils to Robert Sr.'s original Will (on the basis that Robert Sr. lacked testamentary capacity to understand or execute the codicils), to vacate the August 7, 2019 judgment of partial possession, and for

injunctive relief.[5]  The petition named Craig as a defendant, not only in his capacity as the successor executor of Robert Sr.'s succession, but also in his capacity as the "succession representative of Bonny Babin Maloney."  The petition sought to annul the individual bequest made to Bonny of Robert Sr.'s community property interest in the family home on Ridgewood Drive, and to annul and vacate the August 19, 2019 judgment of partial possession that placed Bonny into full ownership of the family home.

In order to prevent Craig, in his capacity as the executor of Bonny's estate, from disposing or otherwise encumbering succession property that now comprised a part of Bonny's estate, the petition to annul also requested the issuance of an *ex parte* temporary restraining order ("TRO").  The TRO was signed by the trial court on August 12, 2020, without notice to Craig, prohibiting him "from alienating, encumbering, selling, exchanging, wasting, concealing, or destroying any moveable and or immovable property comprising the estate of [Robert Sr.] including but not limited to all property set forth in the August 7, 2019 Partial Sworn Descriptive List of Assets and Liabilities and all property set forth in the August 7, 2019 Judgment of Partial Possession …," which included the Ridgewood property.  In short, the nullity action not only directly challenged the validity of the three codicils to Robert Sr.'s Will, but also challenged the specific legacies contained in Bonny's Testament.  In effect, by filing the petition to annul, though filed in their father's succession, Robert Jr. and Kurt sought to reduce Bonny's estate by annulling half of her ownership in the Ridgewood property and other assets, and cancelling those bequests as made in her Testament.  It is undisputed that the TRO, once issued, prohibited Craig, as the executor of Bonny's

---

[5]      In their petition to annul, Robert Jr. and Kurt alleged that the three codicils were invalid because Robert Sr. could not read, he had not executed them in the presence of a notary and two witnesses, he lacked testamentary capacity due to an alleged mental impairment, and that Bonny had unduly influenced him.  According to Robert Jr. and Kurt, the codicils dramatically altered the distribution of assets in favor of Bonny and Craig.

estate, from placing Julie in possession of her inheritance, and from administering and disposing of other assets in Bonny's estate.[6]

A trial on Robert Jr. and Kurt's petition to annul was held on March 11, 2021, in the *Succession of Robert S. Maloney, Sr.* At the conclusion of trial, the trial court ruled from the bench against Robert Jr. and Kurt, finding that Robert Sr. possessed the testamentary capacity to execute the three codicils, and denied all other relief. The trial court's ruling was reduced to judgment on March 24, 2021.[7] Thereafter, on May 27, 2021, Craig, in his capacity as executor of his father's estate, filed a motion in Robert Sr.'s succession seeking to disinherit Robert Jr. and Kurt pursuant to the no-contest clause contained in the first codicil of Robert Sr.'s Will. Following a July 27, 2021 hearing, the trial court issued a second judgment on August 5, 2021, granting the motion to enforce the no-contest clause in Robert Sr.'s Will, effectively disinheriting Robert Jr. and Kurt in their father's succession.[8]

On November 19, 2021, in the instant proceedings—Bonny's succession—Craig, as the executor of Bonny's estate, filed a petition for declaratory judgment seeking to enforce the no-contest clause set forth in Section 13.1 of Bonny's Testament.[9] In particular, Craig sought a declaratory judgment (1) that the no-contest clause in Bonny's Testament was unambiguous, valid and enforceable; (2)

---

[6]     Following the expiration of the TRO, which dissolved as a matter of law, Robert Jr. and Kurt withdrew their request for a preliminary injunction to prohibit the encumbrance, transfer or sale of succession assets.

[7]     The trial court's March 24, 2021 judgment was affirmed by this Court in *Succession of Maloney*, 21-618 (La. App. 5 Cir. 11/9/22), 353 So.3d 292.

[8]     The trial court's August 5, 2021 judgment was also affirmed by this Court in *Succession of Maloney*, 21-683 (La. App. 5 Cir. 11/9/22), 353 So.3d 267.

[9]     Similar to actions taken in Robert Sr.'s succession, Craig, in his capacity as the executor of Bonny's estate, filed a motion on August 18, 2021, to enforce the no-contest clause contained in Bonny's Testament against Robert and Kurt. In response, Robert and Kurt objected to the procedure and separately filed dilatory exceptions to the executor's motion, including dilatory exceptions of unauthorized use of summary proceedings, nonconformity to the petition, and prematurity. Following a hearing on November 29, 2021, the trial court overruled the exceptions, but also denied the executor's motion without prejudice. The executor then filed a petition for declaratory judgment at issue in this appeal and moved for partial summary judgment regarding the enforceability of the no-contest clause.

that Robert Jr. and Kurt had "engaged in a controversy with or against [the] Executor of [Bonny's] estate and which concerned [her] estate," thereby triggering the no-contest clause in Bonny's Testament; and, consequently, (3) that all legacies and bequests to Robert Jr. and Kurt be forfeited.

On April 28, 2022, Craig moved for partial summary judgment against Robert Jr. and Kurt, seeking to have the trial court find that by filing suit and wrongfully obtaining a TRO against him in their father's succession, in his capacity as the executor of Bonny's estate, which effectively enjoined Craig from administering the assets of Bonny's estate, Robert Jr. and Kurt violated the no-contest clause contained in Bonny's Testament, and, accordingly, they are disinherited. Craig argued that the language of the no-contest clause was clear and unambiguous and plainly prohibited such actions, which constituted "engag[ing] in a controversy" by a legatee or heir against the executor concerning Bonny's estate.

In response, while not refuting that they had obtained a TRO against Craig, as the executor of Bonny's estate, prohibiting him from administering certain assets and property in Bonny's estate, Robert Jr. and Kurt argued the no-contest clause in Section 13.1 of Bonny's Testament did not apply because the actions they took against the executor were taken in Robert Sr.'s succession, and not in Bonny's succession proceeding, as Section 13.1 intended to prohibit. Alternatively, Robert Jr. and Kurt averred that the language of the no-contest clause was ambiguous, thus requiring additional evidence in order to determine whether Bonny "intended" for "succession" and "estate," as used in Section 13.1(c), to be used synonymously or interchangeably such that *only* a "controversy" brought against the executor in Bonny's succession proceeding could violate the no-contest clause triggering disinherison.

Craig's motion came for hearing on June 22, 2022, after which the trial court took the matter under advisement. On June 30, 2022, the trial court issued

judgment, with written reasons, granting partial summary judgment in favor of Craig Maloney, the duly appointed executor of Bonny's succession, and against Robert Jr. and Kurt. Specifically, the trial court determined that by filing the petition in their father's succession against the executor of Bonny's estate seeking, in part, to annul a judgment that placed Bonny into possession and full ownership of certain property, which thereafter became a part of her estate, Robert Jr. and Craig violated the clear and unambiguous terms of the no-contest clause of Bonny's Testament (*i.e.*, engaging in a controversy against the executor of Bonny's estate that concerned her estate). Consequently, the trial court adjudged Robert Jr. and Kurt disinherited, and that all legacies, bequests, and interests devolving to them as a result of the death of Bonny Babin Maloney under her September 24, 2019 Testament are forfeited.

Robert Jr. and Kurt separately appealed the trial court's June 30, 2022 judgment.

## ISSUES PRESENTED FOR REVIEW

Based upon our *de novo* review of the record, we find the dispositive issue presented for our review is whether the language contained in the no-contest clause in Bonny's Testament is clear and unambiguous and, if so, what that language means. Stated differently, the issue is whether the language Bonny used in drafting Section 13.1 clearly and unambiguously evidences her intent that the no-contest clause apply to all controversies brought by an heir or legatee against her executor that concerns her estate, whether instituted in her succession proceeding or elsewhere.[10]

---

[10] In his appeal, Robert Jr. raised the follow issues for this Court's review: (1) whether the trial court construed all factual inferences reasonably drawn from the evidence and resolved all doubt in favor of Robert Jr. as the nonmoving party; (2) whether the trial court improperly considered extrinsic evidence to determine Bonny's intent in drafting the no-contest clause when, by the trial court's own admission, the plain language of her Testament is clear and unambiguous; (3) whether the trial court erred by interpreting the no-contest clause in a manner that does not give effect to each provision and is inconsistent with Bonny's intent; and (4) whether the trial court erred when it considered actions taken by

## LAW AND ARGUMENT

### *Summary Judgment and Standard of Appellate Review*

In reviewing the trial court's decision on a motion for summary judgment, this Court applies a *de novo* standard of review using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. *Lapuyade v. Rawbar, Inc.*, 18-474 (La. App. 5 Cir. 12/27/18), 263 So.3d 508, 511-12. "Therefore, appellate courts must ask the same question as the district court: whether there is any genuine issue of material fact, and whether mover is entitled to judgment as a matter of law." *Id.* at 512. Unlike the trial court's findings of fact, trial court's rulings on motion for summary judgment are reviewed without regard or deference because credibility is not an issue. *Montalbano v. Perisch*, 18-602 (La. App. 5 Cir. 5/29/19), 274 So.3d 855, 860-61. Thus, courts of appeal review summary judgment evidence and procedure from the same perspective as the trial court.

Summary judgment procedure is favored and "is designed to secure the just, speedy, and inexpensive determination of every action … and shall be construed to accomplish these ends." La. C.C.P. art. 966(A)(2). After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A genuine issue of fact is one as to which reasonable persons could disagree; if reasonable minds could only reach one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Stogner v.*

---

Robert Jr. and Kurt in Robert Sr.'s succession to determine whether they challenged Bonny's Testament in her succession proceeding.

In Kurt's appeal, he questions whether the trial court erred in failing to find that genuine issues of material fact exist regarding Bonny's testamentary intent precluding summary judgment, and whether a testator can maintain control of matters occurring outside of her succession proceeding by use of a no-contest clause contained in her testament.

*Ochsner Clinic Foundation*, 18-96 (La. App. 5 Cir. 9/19/18), 254 So.3d 1254, 1257, *writ denied*, 18-1723 (La. 1/8/19), 259 So.3d 1023.

### The Intent of the Testator and Admission of Extrinsic Evidence

The intent of the testator controls the interpretation of his testament. If the language of the testament is clear, its letter is not to be disregarded under the pretext of pursing its spirit. La. C.C. art. 1611(A). A cardinal rule of the interpretation of wills is that the intention of the testator as expressed in the will must govern. *Succession of Liner*, 19-02011 (La. 6/30/21), 320 So.3d 1133, 1137 (citing *Soileau v. Ortega*, 189 La. 713, 718, 180 So. 496, 497 (1938)). Importantly, "the court's function is to construe the will as written, without adding words to any controversial parts under the guise of interpreting the testator's intent." *Laborde*, *supra*, 251 So.3d at 464; *see also Succession of Robinson*, 52,718 (La. App. 2 Cir. 6/26/19), 277 So.3d 454, 458, *writ denied*, 19-01195 (La. 10/15/19), 280 So.3d 613. It is well-established that in interpreting wills, the first and natural impression conveyed to the mind on reading the will as a whole is entitled to great weight. *Laborde*, 251 So.3d at 464. The testator is not supposed to be propounding riddles, but is conveying his ideas to the best of his ability so as to be correctly understood at first view. *Succession of Hurst v. Gremillion*, 552 So.2d 799, 801 (La. App. 1 Cir. 1989). Additionally, a testamentary disposition should be interpreted in a sense in which it can have effect, rather than in one in which it can have none. La. C.C. art. 1612. When a testator leaves no forced heirs, he is free to dispose of his estate to whomever he wishes, in any manner he wishes, and to impose any conditions on his bequests that are not contrary to law or good morals. La. C.C. arts. 1519, 1528; *Maloney*, 353 So.3d at 269.

When the words of a testament are plain and unambiguous, the testator's intent should be ascertained from the language used in the testament, giving the words used their usual significance. *Succession of Cottrell v. Quirk*, 05-841 (La.

App. 3 Cir. 2/1/06), 921 So.2d 1235, 1238.  The language used in the testament must be understood according to its common, popular acceptation.  *Id*.  If the testament uses terms of art or "legal" terms, the court should interpret them under "the law in effect at the time the testament was executed to ascertain the testator's intent … ."  La. C.C. art 1611(B).

A court may resort to extrinsic evidence to determine the testator's intent *only* when his or her intent cannot be ascertained from the language of the testament.  La. C.C. art. 1611(A).  Ambiguity exists "when a will is subject to more than one equally reasonable interpretation."  *Succession of Theriot*, 16-639 (La. App. 3 Cir. 5/17/17), 221 So.3d 862, 869, *writ denied*, 17-0919 (La. 9/29/17), 227 So.3d 392.  When a will is free of ambiguity, the will must be carried out according to his written terms, without reference to extrinsic evidence of the testator's intent.  *See Giroir v. Dumesnil*, 248 La. 1037, 1052, 184 So.2d 1 (La. 1966); *Succession of Williams*, 608 So.2d 973, 975 (La. 1992).  In other words, while the court must endeavor to give all legacies of a testament effect, the court cannot ignore the testament as written.  *Succession of Merritt*, 581 So.2d 728 (La. App. 1 Cir. 1991), *writ denied*, 584 So.2d 1165 (La. 1991).

### Enforceability of No-Contest or In Terrorem Clauses in Testaments

A no-contest clause, also referred to as an *in terrorem* clause, is a testamentary provision providing for the revocation of a bequest if a legatee contests the will.  *Maloney*, 353 So.3d at 271; *Robinson*, 277 So.3d at 458.  No-contest clauses are not expressly prohibited by Louisiana law.  *Id*.; *Laborde*, 251 So.3d at 464; 10 La. Civ. L. Treatise, Successions and Donations, § 13.10, citing *Succession of Rouse*, 144 La. 143, 80 So. 229 (1918).

### The No-Contest Clause in Bonny's Testament

In the instant matter, Bonny left no forced heirs; therefore, she was free to dispose of her estate to whomever and in any manner she wished, and to impose

any conditions on her bequests, as long as they contained nothing contrary to law or good morals. *See* La. C.C. arts. 1519, 1528; *Laborde*, 251 So.3d at 464. Section 13.1 of Bonny's Testament, the no-contest clause at issue, provides, in pertinent part:

> I hereby specifically disinherit each and every legal heir of mine, and each and every legatee … under this Last Will and Testament … who at any time either (a) contests or challenges this 2019 Last Will and Testament, any codicils hereto, and any and all orders or judgments rendered in my succession or estate; or (b) seeks to impair or invalidate any of the provisions of this 2019 Last Will and Testament, any codicils hereto, and any and all orders or judgments rendered in my succession or estate; or *(c) is otherwise engaged in a controversy with or against the Executor of my estate and which concerns my estate*; or (d) conspires with or voluntarily assists anyone attempting to do any of the acts described in sections (a) through (c) of this Article 13.1; …[Emphasis supplied.]

Appellants argue that the word "estate" in paragraph (c) must be interpreted to mean that Bonny intended for the no-contest clause to be restricted to actions against her executor that concern her estate brought by heirs or legatees directly in *her succession proceeding.* They contend that the trial court's interpretation and application of Section 13.1(c)—that it pertains solely to disputes involving the corpus of Bonny's estate—completely ignores the plain language of paragraph (c) and the language of the entire no-contest clause. According to appellants, a plain reading of Section 13.1 evidences that 13.1(a) and (b) involve challenges to Bonny's Testament itself, whereas 13.1(c) is designed to protect her executor from attacks involving the administration of her estate. Bonny uses identical verbiage in Paragraph 1.1 when discussing the executor "of her estate." Thus, appellants aver that this interpretation of the no-contest provision "creates symmetry within the [Testament] itself while at the same time dispensing with the need" to speculate as to Bonny's intent.

Additionally, appellants argue that the trial court's interpretation of Section 13.1(c) ignores Section 13.2 and, in effect, renders it meaningless. Section 13.2 provides:

> Further, said legacies, bequests and interests to any such Challenger [which is defined in paragraph 13.1] are hereby revoked in the event said heir or legatee does not sign, prior to issuance of any judgment of possession in my succession, a written agreement waiving the right to contest, challenge, impair or invalidate any of the provisions of this 2019 Last Will and Testament, any codicils hereto, and any and all orders and judgments rendered in my succession or estate.

Appellants note that Bonny specifically did not use "heir" or "legatee," but rather, used the word "Challenger," a term defined in Paragraph 13.1 as someone who violates Paragraph 13.1(a) – (d), when identifying those who may be required to sign a waiver in order to avoid disinherison. Thus, according to appellants, a Challenger's bequest will be revoked only if he refuses to sign a written agreement waiving the right to contest any judgment of possession. In this regard, appellants contend the trial court's interpretation does not comport with actual events that have occurred to date in Bonny's succession. For example, on August 5, 2021, the trial court issued a judgment of partial possession placing Craig and Julie in possession of certain bequests made in Bonny's Testament, and on January 24, 2022, a second judgment of partial possession was signed placing Julie in possession of additional property bequeathed to her by Bonny. According to appellants, even assuming they are "challengers" under Section 13.1(c), their legacies and bequests should not be revoked because they voiced no objection to the entry of these judgments. Because La. C.C. art. 1612 does not allow for a testament to be interpreted in a manner that removes all meaning from another provision, appellants argue the trial court erred in its interpretation of Bonny's Testament. At the very least, appellants argue that disputed facts exist as to

Bonny's intent regarding the scope of the no-contest clause, and thus, summary judgment was improper. We disagree.

We find that the language Bonny used in the no-contest clause of her Testament is clear and unambiguous, as it is not subject to more than one reasonable interpretation. *See Theriot*, 221 So.3d at 869. Based on our *de novo* review of the no-contest clause, we find that any dispute or controversy brought by an heir or legatee in the instant succession proceeding is covered by paragraphs (a) and/or (b) of Section 13.1. Both of these paragraphs clearly state that an heir or legatee is disinherited if he challenges any order or judgment rendered *in this succession*, meaning Bonny's succession. If Bonny's intent was to only cover contests, challenges, or attempts to impair or invalidate orders or judgments in the instant proceeding, we conclude that there would have been no need or purpose for Bonny to have included paragraph (c) because all such scenarios are already covered in paragraphs (a) and/or (b), including any challenge to an order or judgment governing actions of the executor, Craig, taken *in her succession proceeding*. However, paragraph (c) does not reference the instant succession. Instead, it contains the broader term "estate." Moreover, paragraph (c) does not use the word "order" or "judgment." Instead, by adding paragraph (c), we find that Bonny clearly and unambiguously intended for the reach of the clause to include any "controversy" against the executor that merely "concerns" her estate.

Additionally, appellants aver that because Bonny used "succession" and "estate" in paragraphs (a) and (b) interchangeably, her use of the word "estate" is superfluous. Because a judgment or order cannot be rendered in an "estate," appellants contend this Court should "read in" the word "succession" in paragraph (c) and find that the terms "succession" and "estate" mean the same thing and, accordingly, refer solely to the instant proceeding. We find this attempt to create ambiguity where there is none unreasonable.

"Succession" is defined in La. C.C. art. 871 as the transmission of the estate of the decedent to his successors. La. C.C. art. 872 defines "estate" of the decedent as the property, rights, and obligations that a person leaves after his death. In short, Bonny's succession is the legal proceeding wherein the property and assets comprising her estate are distributed, whereas Bonny's estate refers to the actual property and Bonny's rights to that property. A finding that "succession" and "estate" mean the same thing, as posited by appellants, ignores the plain language of the no-contest clause. If Bonny had intended to include "succession" in paragraph (c), she could have done so, just as she did in paragraphs (a) and (b), but she did not. Further, such a finding ignores the disjunctive meaning of the phrase "succession or estate" used in paragraphs (a) and (b). Instead, we find this phraseology conveys mutually exclusive scenarios and an intent to recognize the different meanings of "succession" and "estate." Moreover, appellants' interpretation gives no meaning to paragraph (c) because, as previously stated, any challenge by an heir or legatee to any aspect of the instant proceeding is already covered in paragraphs (a) and/or (b). Thus, in order to reconcile Section 13.1(c), which includes only the word "estate," with Sections 13.1(a) and 13.1(b), which include both "succession" and "estate," Sections 13.1(a) and 13.1(b) must pertain only to disputes involving Bonny's succession, whereas Section 13.1(c), which addresses disputes involving the "corpus of her estate," extends the scope of the no-contest clause to "controversies" that merely "concern" Bonny's estate.

On *de novo* review, we find that Bonny's inclusion of paragraph (c) in Section 13.1 clearly and unambiguously expresses her intent to broaden the reach of the no-contest clause beyond actions or controversies brought in the instant succession proceeding. Accordingly, we hold that to "read in" the word "succession" in paragraph (c) ignores the clear expression of Bonny. The word "estate" unequivocally refers to Bonny's property and her rights to that property.

There is no other equally reasonable interpretation of paragraph (c)—Bonny did not intend to limit its application solely to the instant proceeding.

## CONCLUSION

In sum, after thoroughly reviewing the record and applicable jurisprudence *de novo*, we find the plain language of the no-contest clause in Bonny's Testament lays bare that Bonny did not want her heirs or legatees to engage in *any* controversy with or against her executor concerning her estate. The language of the no-contest clause is broad and unqualified. It is clear that by including Section 13.1(c), Bonny intended to prevent disputes between her heirs regarding not only matters pertaining to her succession proceeding, but to also curtail controversies concerning any aspect of her estate. Stated differently, the language is sufficiently broad, in our opinion, to include any controversy with or against Bonny's executor concerning her estate, regardless of whether an heir or legatee brings the controversy in Bonny's succession proceeding or engages in the controversy elsewhere, as long as the controversy against the executor concerns her estate.

Only when the language of a testament is ambiguous and there remain disputed issues of fact as to the testator's intent should summary judgment be denied. Here, the language of the no-contest clause in Bonny's Testament is clear and unambiguous as it is not open to more than one reasonable interpretation. Consequently, we find the trial court was correct in not relying on anything other than the plain language of the Testament in ascertaining Bonny's intent that an heir or legatee who engages in a controversy with or against her executor concerning her estate—whether brought in her succession proceeding or elsewhere—triggers the no-contest clause and results in his or her disinherison.

By seeking to invalidate the three codicils to their father's Will and to nullify the judgment of possession that vested Bonny with full ownership of certain property upon Robert Sr.'s death, and which Bonny, thereafter, specifically

bequeathed to others in her Testament, Robert Jr. and Kurt's actions did, in effect, restrict the probate of these bequests, even though the contest as to their validity was not brought within Bonny's succession proceeding. Further, the TRO obtained by Robert Jr. and Kurt against Craig, in his capacity as the executor of Bonny's estate, sought to remove property from Bonny's estate and prevented Craig from administering Bonny's estate and the specific bequests contained in her Testament. By doing so, we find that the trial court's determination that Robert Jr. and Kurt engaged in a controversy against the executor of Bonny's estate, although it originated in their father's succession, which concerned her estate (*i.e.*, concerned her property and her ownership rights to that property), in violation of the clear and unambiguous terms of Section 13.1(c) of Bonny's Testament triggering their disinherison, was legally correct. Accordingly, Robert, Jr. and Kurt Maloney are disinherited, and all legacies, bequests, and interests devolving to them as a result of the death of their mother, Bonny Babin Maloney, under her September 24, 2019 Last Will and Testament are forfeited.

## DECREE

For the foregoing reasons, finding no error in the trial court's granting of partial summary judgment in favor of Craig S. Maloney, we affirm the trial court's June 30, 2022 judgment resulting in the disinherison of Robert S. Maloney, Jr. and Kurt Maloney.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**OCTOBER 4, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

*Curtis B. Pursell*

**CURTIS B. PURSELL**
CLERK OF COURT

# 22-CA-571

## E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE ELLEN SHIRER KOVACH (DISTRICT JUDGE)
ANDREA V. TIMPA (APPELLEE)          MCCLAIN R. SCHONEKAS (APPELLEE)          PATRICK S. MCGOEY (APPELLEE)
MICHAEL G. CALOGERO (APPELLANT)     PATRICK T. ISACKS (APPELLANT)            W. SPENCER KING (APPELLANT)
JASON R. ANDERS (APPELLEE)          LAUREN F. BARTLETT (APPELLEE)            KATIE L. DYSART (APPELLEE)

## MAILED

J. SCOTT LOEB (APPELLEE)
ATTORNEY AT LAW
1180 WEST CAUSEWAY APPROACH
MANDEVILLE, LA 70471

TIMOTHY S. MADDEN (APPELLANT)
ATTORNEY AT LAW
201 ST. CHARLES AVENUE
45TH FLOOR
NEW ORLEANS, LA 70170

PATRICIA G. BRECKENRIDGE
(APPELLEE)
ATTORNEY AT LAW
141 EAST OAKRIDGE PARK
METAIRIE, LA 70005

APRIL L. WATSON (APPELLEE)
GREGORY S. LACOUR (APPELLEE)
KRISTINA J. FONTE (APPELLEE)
ATTORNEYS AT LAW
3421 NORTH CAUSEWAY BOULEVARD
SUITE 900
METAIRIE, LA 70002

EDWARD H. ARNOLD, III (APPELLEE)
MARGARET MENTZ (APPELLEE)
ATTORNEYS AT LAW
201 SAINT CHARLES AVENUE
SUITE 3600
NEW ORLEANS, LA 70170